HON. ASAHEL PECK,
HON. WILLIAM C. WILSON, } ASSISTANT JUDGES.
HON. BENJAMIN H. STEELE. }

---

### WILLIAM MILLER v. DANIEL CUSHMAN.

*Replevin.   Officer's Return.   Sale.*

To constitute a replevin the officer must have delivered the property to the plaintiff as well as taken it from the defendant.   If the bond is given after the taking and before the delivery it will be in season to comply with the statute.   The statement of the officer in his return that he "replevied" the property will be understood to refer to the taking only when it is followed by a statement of the appraisal, of the bond, and lastly of the delivery.

If the substantial facts relative to the bond appear on the face of the return; upon a motion to dismiss because the particulars do not appear, they may be supplied by reference to the bond itself, which is part of the record.

Miller v. Cushman.

The statement in the return that the appraisers acted "upon their oaths" is sufficient without its appearing affirmatively that they were sworn, or that the oath was administered by the officer.

The omission to state that the appraisers were "disinterested and discreet" will not invalidate a return in which the names of the appraisers are given with the certificate that they were appointed according to law.

B. manufactures a wagon for C., to be paid for on delivery. Before delivery, and while sixty dollars is due on it, C. sells it to D. D. calls on B. and talks with him about the unpaid sixty dollars—comes to no understanding with relation to the time of its payment, but leaves it to be arranged afterwards—and B. tells D. that the wagon may remain where it is. While the terms of the payment to B. remain unsettled, and before D. pays any part of the purchase money, B. and C. together sell it to A., who has no notice of any sale to D. A. pays for the wagon and procures B., after his lien is extinguished, to keep it for him. Held, that A.'s title is good as against D.

While anything remains to be done between the vendor and the vendee, as to settle the time of payment, the sale is not perfect.

ACTION of replevin, in which a bond was filed and returned with the writ. The defendant filed a motion to dismiss the action, at the September Term, 1864, BARRETT, J. presiding, on the ground that it did not appear that the writ had been served as required by law. The motion was overruled, and the cause continued for pleadings and further proceedings in due course. The defendant excepted to the judgment of the court in overruling said motion.

The writ is replevin in the common form, commanding the sheriff to replevy "one buggy wagon belonging unto William Miller, of Wilmington, in said county of Windham, and now unlawfully taken and detained by Daniel Cushman of," etc. The officer who served said writ, made a return thereon as follows:

"WILMINGTON, in said county, this 6th day of July, A. D. 1864. By virtue of the within writ and summons, I replevied the within named buggy wagon found in the possession of the within named Daniel Cushman, and the parties refusing and neglecting to agree upon the value of said buggy wagon, I proceeded to appoint appraisers according to law. I appointed A. B. Childs, O. J. Gorham, and G. F. White, who, upon their oaths, appraised the said buggy wagon as its just and true value in money, at the sum of one hundred and twenty-three and one-third dollars, ($123.33⅓.) I took a proper bond as in such cases provided by statute from the within named plaintiff with sufficient sureties for double the amount of said appraisal being

for the sum of two hundred and forty-six dollars and sixty-seven cents, and on same day I delivered the said buggy wagon to the said William Miller. And this 25th day of said July, I delivered to the said defendant a true and attested copy of the within writ, with my return hereon thereon endorsed.

Attest, ASHLEY STONE, Deputy Sheriff."

The case was tried by the court by consent of parties at the April Term, 1865, BARRETT, J. presiding, when the following facts appeared:

Bugbee engaged Bassett to make a buggy for the price of $120. It had been completed about the middle of June, 1864, and was remaining at Bassett's shop. Bugbee had paid to Bassett $60. towards the price of the buggy, the residue of the price remaining unpaid. In the latter part of said June, Bugbee told Bassett that he wanted to sell the buggy, and requested him to sell it to any body who would give him $120. for it. Soon thereafter, the defendant went to the shop and examined the buggy, Bassett informing him that he was authorized to sell it for $120., whereupon the defendant told Bassett that he would take it at that price. Bassett told the defendant that $60. had been paid on it and that he had a claim on it for $60., whereupon defendant told him that Bugbee had told him, (the defendant) that he might have it for $120., and might pay it when he was a mind to. To this Bassett replied that if this was so he presumed that Bugbee had got the money otherwise with which to pay the remaining $60., that he should be wanting the money in a few days. It was left to be arranged afterwards, when Bugbee should come round, he then being absent. The defendant asked Bassett if the buggy could not remain in his shop for a few days as it was not convenient for him to keep it at home just then. Bassett replied that it could.

After this, and on Saturday, the 2d day of July, the plaintiff went with Bugbee to the shop and examined the buggy, and the plaintiff then bought it of Bugbee for $120., and at the same time paid $20. towards its price. Plaintiff with Bugbee then went down into the workshop and informed Bassett that he, plaintiff, had bought the buggy and arranged with Bassett to let it remain in the shop till Monday, Bassett telling the plaintiff that it could not go out of his shop till he had got his pay of $60., for which he held a claim on

it. Afterwards, on the same day, plaintiff with Bugbee went to Bassett's shop, and there paid the residue of the price to Bugbee, who at the same time paid the $60. to Bassett in discharge of his claim upon it. Neither the plaintiff nor Bugbee had knowledge or notice of what had transpired between the defendant and Bassett about buying the buggy.

On the same day, the defendant heard that the plaintiff had bought the buggy of Bugbee, and some time between that and his taking the buggy, he tendered to Bugbee $121. in payment for it, which he declined to take until he could see the plaintiff. Afterwards, and before taking the buggy, he tendered the same sum to Bassett, who also declined to take the money, saying to the defendant that he did not want him to take the buggy. After making this tender, the defendant took the buggy from Bassett's shop without the knowledge of either the plaintiff, Bassett or Bugbee. On Monday, the 4th of July, the plaintiff went to the shop to get the buggy and found that it was gone, and was informed that it had been taken away by the defendant. The defendant took the buggy, claiming it to be his property, under his purchase of it of Bassett, as above set forth.

From the above facts the court came to the conclusion that there was no legal delivery to and acceptance of the property, by the defendant, and rendered judgment for the plaintiff for five cents damages and his costs, to which the defendant excepted.

*Flagg & Son*, for the defendant.

I. The *motion to dismiss*, should have prevailed. *Bennett et al. v. Allen*, 30 Vt. 684 ; *Glover* v. *Chase*, 27 Vt. 533 ; *Moors* v. *Parker, et al.*, 3 Mass. 310 ; *Bliss et al.* v. *Conn. & Pass. R. R. R. Co.*, 24 Vt. 428.

It insisted that the service was defective, as by the officers return upon the writ, in the following particulars : 1st. He "*replevied*" the property before taking the bond. Gen. Stat., ch. 35, § 15 ; *Bennett et al.* v. *Allen*, 30 Vt. 684 ; *Cady* v. *Eggleston et al.*, 11 Mass. 285. 2d. It does not appear that the appraisers were "*disinterested and discreet.*" *Dodge, Admr.* v. *Prince*, 4 Vt. 192. 3d. Nor does it appear that the appraisers were "*sworn by the officer,*" or that they were sworn *at all*, except by inference. 4th. Nor does it appear what was the condition of the bond taken, or that it had any condition what-

ever, or who was the obligee thereof, or that it was "*returned to the clerk of the court with the original writ*," all which, we insist, should appear affirmatively in the return upon the writ, without the aid of extrinsic evidence. *Sleeper* v. *Newbury Seminary et al.*, 19 Vt. 452 ; *White River Bank* v. *Downer et al.*, 29 Vt. 338. Nor will the alleged defects be supplied by the officer's statement that he "proceeded to appoint appraisers *according to law*," and that he "took a *proper* bond as in such cases provided by statute." *Henry* v. *Tilson*, 19 Vt. 450. 5th. The return is also defective in that it does not show that the bond taken, was in "a penalty double the value of the property to be replevied," as ascertained by the appraisers. *Bennett et al.* v. *Allen*, 30 Vt. 684.

II. But should the court adjudge the officer's return sufficient, there was a good *delivery* of the property to the defendant. The sale from Bassett to Bugbee was complete ; and Bassett became the agent of Bugbee to sell the buggy, and when he sold to the defendant his agency terminated. 2 Kent's Com. 643 ; Long on Sales, 403. And he thereupon became the bailee of the defendant, and there was, consequently, a legal delivery and acceptance of the property, good as against either subsequent *bona fide* purchasers, or attaching creditors of Bugbee. *Elmore* v. *Stone*, 1 Taunt. 457 ; *Barney* v. *Brown*, 2 Vt. 374 ; *Spaulding* v. *Austin*, 2 Vt. 555 ; *Pierce* v. *Chipman*, 8 Vt. 334 ; *Merritt* v. *Miller*, 13 Vt. 416 ; *Potter* v. *Washburn*, 13 Vt. 558 ; *Willard* v. *Lull*, 17 Vt. 412 ; *Bailey* v. *Quint*, 22 Vt. 474 ; *Hutchins et al.* v. *Gilchrist et al.*, 23 Vt. 83 ; *Green* v. *Merriam*, 28 Vt. 801 ; *Flanagan* v. *Wood*, 33 Vt. 332 ; *Wooley* v. *Edson et al.*, 35 Vt. 214 ; *Vincent* v. *Germond*, 11 John. 283 ; *Marvin* v. *Wallace*, 37 Eng. L. & Eq. 6.

*Charles N. Davenport*, for the plaintiff.

I. The county court correctly overruled the motion to dismiss. The service is in substantial compliance with the statute requisitions. See G. S. ch. 35, § 15, 2–3.

II. The judgment of the county court, upon the merits of the case, should be affirmed. Upon this branch of the case, we do not see that any question can properly be made before the court. The question of delivery and acceptance was one of fact. Chitty on Con. 312 ; 2 Parsons on Con. 329 ; *Green* v. *Merriam*, 28 Vt. 801 ; *Kirby*

v. *Mayo,* 13 Vt. 103 ; *Card* v. *Sargeant,* 15 Vt. 393 ; *Oaks* v. *Oaks,* 27 Vt. 410.

III. The facts do not show such a delivery and acceptance as will take the case out of the statute of frauds. Chitty on Con. 307 ; 2 Parsons on Con. 321 to 324 and notes. This case is barren of any *acts* of the parties indicating either delivery or acceptance. Bassett never discharged his lien for the $60. His mind and the defendant's never met as to the time or manner of payment. The whole subject matter of the sale was left for future arrangement, " when Bugbee should come round, he then being absent." It never was arranged. The plaintiff found the wagon in possession of Bugbee ; he bought it—paid for it—so that Bassett's lien was discharged ; made a bailee of Bassett to keep it for him till Monday following.

Bassett's conduct shows that he did not understand he had sold the buggy. And it never was sold, by Bugbee or his agent, till the plaintiff purchased it on the 2d of July.

The opinion of the court was delivered by

STEELE, J. I. *a.* The fair construction of the officer's return would place the appraisal and giving of the bond, as they should be, subsequent to the taking of the property from the defendant and prior to its delivery to the plaintiff. This is clear from the order of statement. The word " replevied " at the beginning of the return is evidently not used in a technical sense, which would include both the taking and also the delivery, which is mentioned at the last of the return ; but it is used with reference to the taking only. We see no objection to the return so far as the order of time is concerned. The bond should be given before the replevin is completed, and it appears to have been so done.

*b.* The return does not show that the bond and its return to court in all respects conformed to the requirements of the statute. But the substantial facts with regard to the bond do appear from the return, and the others may be supplied by a reference to the bond itself which is part of the record and confessedly regular.

*c.* The appraisers having acted " upon their oaths " may create only an inference that they were sworn, but the inference is unavoidable. We do not think it important that the officer should state in his return by whom they were sworn.

*d.* It is not stated in the return that the appraisers were "disinterested and discreet." The officer merely gives their names with a statement that he "proceeded to appoint them according to law." Had he omitted their names this objection would have had more force. As it is, if either was interested the opportunity was given the defendant to observe and take advantage of it. A mere statement that an act was done according to law without stating what was done by the officer is not generally enough because as is said in *Henry* v. *Tilson*, 19 Vt. 450, such ministerial officers should *set forth* the acts done by them so that the court and not themselves may judge of their sufficiency. In this case the officer has set forth the act by telling us whom he appointed. Whether they were interested or not would often be a conclusion of law. The cases, it is true, require an officer in levying upon real estate to return that the justice who appointed appraisers was competent to adjudicate between the parties. This is following the statute, but in following it courts do not require him to state whether the justice is related within certain degrees to either party, and until this is done the court cannot decide whether the officer's conclusion is correct. It may further be noticed that much of the artificial reasoning and literal following of the statute which have been thought applicable to a final levy of execution upon real estate by which titles are passed, cannot without great inconvenience and wrong be allowed to govern the sufficiency of a return upon a writ of replevin or upon *mesne* process.

We think the motion to dismiss was properly overruled.

II. The facts found by the court warrant a judgment for the plaintiff. No question is made of the plaintiff's title unless the defendant's negotiation for the wagon amounted to a purchase, so consummated as to be valid against a subsequent purchaser without notice. The facts do not show such a purchase. Bassett had the wagon in his possession. Bugbee had no right to the posession of it until he should pay Bassett the sixty dollars due on it. He could sell the defendant no more right or title than he had himself. The defendant could, therefore, consummate no purchase or obtain any right to the possession by negotiation with Bugbee alone. After agreeing with Bugbee as to the price, it was necessary that the defendant, before he could insist on a delivery, should either pay Bas-

sett the sixty dollars due on the wagon, or agree with *Bassett* for delay and delivery without payment. He did neither. He had an interview with Bassett but did not come to an understanding with him on the subject of this payment, but left it to be arranged afterwards. It was never arranged. While the terms thus remained to be settled the sale was incomplete. It is not claimed that the defendant paid anything towards the purchase and Bugbee could give him no delivery without the assent of Bassett. This assent was not procured. We cannot say the court erred in refusing, while the wagon remained in the actual custody of Bassett, to presume a delivery from the mere fact that Bassett said in reply to the defendant's inquiry that the wagon might remain where it was. His answer did not imply that it might be removed before payment; and we do not think that, as against Bassett, the defendant ever acquired any right to take the wagon without payment of the sixty dollars which was due on it before delivery. The plaintiff's subsequent purchase was accompanied by entire payment, and by an express agreement on Bassett's part, after his lien was extinguished, to keep the wagon for the plaintiff. This was a delivery. The plaintiff's title will therefore prevail over the defendant's uncompleted purchase. *Shepley* v. *Davis*, 5 Taunt. 617 ; *Warren* v. *Buckminster*, 4 Foster, 336.

Judgment affirmed.